UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  17-CR-20109-UU

UNITED STATES OF AMERICA

v.

SEGUNDO JACINTO GARCIA BATIOJA,

    Defendant.
_____/

# DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD SENTENCING VARIANCE

COMES NOW the Defendant, SEGUNDO JACINTO GARCIA BATIOJA ("Segundo"), through undersigned counsel, and hereby files this sentencing memorandum and moves this Honorable Court for a downward sentencing variance[1] and states in support of said motion:

## I.  Advisory Sentencing Guidelines

1. The Supreme Court's *Booker* decision grants discretion to this Court to vary from the guidelines and tailor a sentence that is in line with the full range of statutory considerations set forth in 18 U.S.C. §

---

[1] Per 21 U.S.C. Section 960(b)(1)(B)(ii), this Court cannot sentence Segundo below the statutory minimum mandatory of 10 years.  In the event the Government files a motion pursuant to Section 5k1.1 of the United States Sentencing Guidelines and 18 U.S.C. Section 3553(e) ("5k motion"), Segundo moves this Court for a downward sentencing variance below the ten (10) year minimum mandatory.

3553(a) (hereinafter referred to as "3553").  *See generally United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Rita v. United States*, 551 U.S. 338 (2007).

2. Additionally, the Supreme Court has emphasized that district courts are only required to give "some weight" to the advisory guidelines just like the other 3553 factors.  *See Kimbrough v. United States*, 128 S. Ct. 558 (2007); *United States v. McBride*, 511 F. 3d 1293 (11Th Cir. 2007).  "If a district court applies the guidelines as though they were mandatory or treats the range as presumptively reasonable, that is procedural error."  *United States v. Hill*, 643 F.3d 807, 880 (11th Cir. 2011).

3. Rather, the guidelines are a starting point, or the initial benchmark, for a sentence.  *See Gall,* 552 U.S. at 49-50.  The remaining factors outlined in 3553 must also be considered in fashioning a sentence that is sufficient but not greater than necessary.  *See United States v. Pugh*, 515 F.3d 1179, 1203-04) (11th Cir. 2008).

   II.   **Presentence Report Guideline Range and 10 Year Minimum Mandatory**

4. The Presentence Report ("PSR") calculates Segundo's total offense level at 31 with a criminal history category of I resulting in an initial guideline range of 108 to 135 months. The minimum term of imprisonment, however, is 10 years pursuant to 21 U.S.C. Section 960(b)(1)(B)(ii). Therefore, Segundo's ultimate guideline range is 120 to 135 months.

5. For reasons explained below, this Court should downward vary from the Court determined guideline range. Such a sentence is sufficient, but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553.

### III. Nature and Circumstance of the Offense

6. On January 1, 2017, Marine Patrol spotted a Go-Fast Vessel ("GFV") traveling northbound at a high rate of speed in international waters approximately 227 nautical miles southwest of Guatemala. The U.S. Coast Guard ("USCG") was alerted and tracked the GFV with a helicopter.

7. USCG staff observed the crew of the GFV jettisoning bales overboard. Eventually disabling rounds were fired at the engine to cause the vessel to stop after initial commands to stop were not

followed. The GFV was boarded and the jettisoned bales were recovered. Approximately, 186 kilograms of cocaine were recovered.

8. Segundo was identified as a crew member of the GFV and admitted that he knew there was cocaine on the vessel.

9. Segundo was recruited to participate in the smuggling trip. A promise of relatively big pay day compared to what he earned fishing (an average of $30.00 per week) lured him to the illicit venture. He had never done anything like this before (no prior criminal history).

10. Following the indictment, Segundo pled guilty and provided additional information during his "safety valve" statement. At his safety valve statement, Segundo admitted that he agreed to help smuggle the cocaine because he needed the money. At sentencing, the Defense will provide further information about his safety valve statement.

## IV. History and Characteristics of the Defendant

11. Segundo is 28 years old. He was born on June 15, 1998 in the city of Esmeraldas, Ecuador. Except for living one year in Quito, Ecuador in 2010, Segundo has lived his life in Esmeraldas, Ecuador.

### A. Childhood

12. Segundo is one of five children.  He is the eldest.  His parents were never legally married, and he was primarily reared by his mother.

13. Segundo's childhood was marked with extreme poverty and domestic violence.  His father, Jacinto Liborio Garcia Bone, was a violent, alcoholic man.  When Segundo was 12, Segundo's father went to prison for 6 years for killing his cousin.  When his father got out, he never came back home.

14. Before going to prison, Segundo remembers his father physically abusing his mother, Sandra Bercelia Batrioja Bautista.  The physical abuse was so bad that Segundo recalls his mother having to go to the hospital on several occasions.   Because of all of this, Segundo has no present relationship with his father.

15. Segundo has four children.  He has two children (ages 7 and 5) from a prior relationship with Janine Yessenia Segovia Molina.  These two children and their mother live with another man in Quito, Ecuador.  Periodically he has sent money to Janine whenever he made extra money.

16. Segundo also has a one-year old son and stepson with his common-law wife, Janiel Garcia Valencia.  For a while, Segundo

lived with wife, son, stepson, sister, his sister's two sons and his mother at his mother's home. Together, they lived in poverty with Segundo doing the best he can to financially support them with fishing. Prior to his arrest, Segundo lived with his wife and their children in a rented home. *Attached hereto are Composite Exhibit "A" are photographs of Segundo's family at his mother's home.*

### B. Education and Work Experience

17. Segundo cannot read or write Spanish. He never went to school of any kind. He only speaks Spanish, and he speaks it poorly.

18. Segundo is a fisherman, and he has been fishing since the age of 11.

19. In 2006, he served one year in the military (mandatory service). In 2010, he moved to Quito, Ecuador to earn more money. While working as a security guard in Quito, he was stabbed and robbed on his way home from work. The injuries were severe. His lungs were punctured, and he still has lingering pain from the attack. Later in 2010, Segundo returned to Esmeraldas to work as a fisherman.

20. Before the arrest, Segundo used his mother-in-law's boat to fish for shrimp, snapper, or corbina. He would go about a mile out on the

open Pacific Ocean to catch fish using a fish net.  The boat he used was a modest one with a small engine.  His earnings financially supported his mother, wife, step-child, and son.  *Attached hereto as Exhibit "B" is a photograph of the area where Segundo would launch his boat to fish.*

### C. Criminal History

21. Segundo has no criminal history.

### D. Impact of Ecuadorean Earthquake

22. On April 16, 2016, a powerful 7.8 earthquake struck a large area of Ecuador's Pacific coast including the coastal region of Esmeraldas.[2]  This earthquake had a substantial effect on economic activity and devastating consequences for the country's population.[3]

23. The earthquake destroyed lots of buildings in Esmeraldas including Segundo's grandmother's home.  The earthquake also impacted his ability to fish and provide for his family.  Segundo describes how fishing and shrimping became more difficult after the earthquake.  Earning a living to support his family became more difficult.

---

[2] http://www.focus-economics.com/countries/ecuador/news/special/fallout-from-massive-earthquake-will-restrain-economic-growth-and
[3] See id.

24. In this environment, any reasonable person can see how desperation can cause otherwise hardworking, law-abiding citizens to take desperate measures including breaking the law.

### V. The Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public, Promote Rehabilitation and to Avoid Unwarranted Sentencing Disparities & Jury Recommendation

#### A. Respect for the Law, Just Punishment, Adequate Deterrence & Protection of the Public

25. A sentence of 10 years or greater would be a grossly unfair, disproportionate sentence considering Segundo's background. Segundo drew a tough ticket in life; one of extreme poverty and difficult childhood. The Ecuadorean earthquake made already difficult living worse. While Segundo's ultimate decision to participate in the smuggling trip was a bad one, which he fully accepts responsibility for, a fair adjudication and sentence must consider his background and the circumstances leading up to that bad decision. Indeed, the law requires it.

26. It is clear to see that a sentence below the guideline minimum is a sufficient, but not greater than necessary sentence to achieve the sentencing goals and criteria laid out in 18 U.S.C. Section 3553.

WHEREFORE, the Defense respectfully requests this Court to grant a downward variance from the sentencing guidelines that is otherwise determined at sentencing.

Respectfully submitted,

By: s/Deric Zacca
DERIC ZACCA, ESQUIRE
Fla. Bar No. 0151378

Deric Zacca, P.A.
110 Tower
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 450-4848
Facsimile: (954) 450-4204

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 22, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in this matter by CM/ECF.

s/Deric Zacca
DERIC ZACCA, ESQUIRE